## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO WESTERN DIVISION AT DAYTON

### (CATCHMENT DISTRICT

*Wayne Doyle*

*Case no. 3:07-003*

*Plaintiff,*

*-vs-*

*Judge Thomas M. Rose*
*Magistrate Michael Merz*

*Clark County Library and*
*John McConagha, et al,*

$MOTION$

## DEFINITE STATEMENT REQUEST EXPLANATION
## OBJECTION AND RECONSIDERATION CONCERNING:

*THIS COURTS 2/21/2007 AND 2/22/2007 ENTRY, ORDER .DECISION, .*
*DENYING PLAINTIFF'S MOTION FOR DEFINITE STATEMENT AND/OR*
*FINDINGS OF FACT ANd CONCLUSIONS OF LAW.*
*-CRIMINAL CASE CAPTION.*

### 1/5/2007 TRANSCRIPT ENCLOSED

### IN SUPPORT OF THE FOREGOING

*Civil rule 12(c) states if a pleading to which a responsive pleading is*
*permitted is so vague or ambiguous that a party cannot reasonably be*
*required to frame a responsive pleading, he may move for a definite*
*statement before interposing his responsive pleading. This **motion** shall*
*point out the defects complained of and the details desired.*

Recommendation (Doc. #10) on January 16, 2007. On February 8, 2007, there being no further objections to either the Chief Magistrate Judge's Report and Recommendations (Doc. #5) or his Supplemental Report and Recommendations (#10), the Court adopted those Reports and Recommendations overruling Plaintiff's Objections (Doc. #8). To the extent that this pleading objects to either or both Reports and Recommendations (Doc. #5 and #10), it is not timely and the Court's previous ruling adopting said Report and Recommendations (Doc. #5 and Doc. #10) would render these objections moot.

Another document that it would appear Plaintiff objects to is a Decision and Order (Doc. #17) filed by the Chief Magistrate Judge on January 25, 2007. This Decision and Order (Doc. #17) was in response to Plaintiff's Objections (Doc. #15) to the Chief Magistrate Judge's Report and Recommendations (Doc. #13) on a request for preliminary injunctive relief. In said Decision and Order, the Chief Magistrate Judge withdrew that Report and Recommendation (Doc. #13) denied Plaintiff's Motion to Transfer and granted Plaintiff's request for transcript of the January 5 and 22 hearings on the Motions for Temporary Restraining Order and Preliminary Injunction and directed Plaintiff to promptly cause the Clerk to issue process and have process served which would permit the Court to set a preliminary pretrial conference pursuant to Fed. R. Civ. P. 16 at which time any request for preliminary injunctive relief would be reset.

The final document to which Plaintiff objects would be the Chief Magistrate Judge's Decision and Order Denying in Part and Finding Moot in Part Plaintiff's Motion for Findings of Fact and Conclusions of Law (Doc. #22) filed February 2, 2007. This decision was precipitated by Plaintiff's Motion for Findings of Fact and Conclusions of Law (Doc. #21) filed February 1, 2007. The Chief Magistrate Judge rightfully concluded the only matter relevant to Plaintiff's Motion would be his ruling on the Motion for Temporary Restraining Order since the ruling on the Motion for Preliminary Injunction was withdrawn. This Court has specifically reviewed the Magistrate Judge's Report and Recommendations (Doc. #5) that denied the Motion for Temporary Restraining Order and which was subsequently adopted by the Court on February 8, 2007 by Entry and Order (Doc. #23). The Court finds that in this Report and Recommendation the Chief Magistrate Judge did find the facts specifically and stated separately his conclusions of law which this Court subsequently adopted over objections.

-2-

# IN THE UNITED STATES DISTRICT COURT

*On 2/21/2007, Judge Merz stated: unless Plaintiff causes process to be issued for service no later than March 1, 2007, the Magistrate Judge will recommend that this case be dismissed for want of prosecution.*

*On 1/5/2007, Judge Merz said I had 120 days to serve the defendants. See. Transcript of proceedings page 29.*

*Wayne Doyle's objection: motion for definite statement:*
*Will this Court state for the record how long does Plaintiff Doyle have to serve the defendant,s a copy of the complaint?*

*On 2/22/2007, Judge Rose said: To the extent that this pleading objects to either or both Reports and recommendations(Doc. #5 and #10), it is not timely and the Court's previous ruling adopting the Report and Recommendations (Doc.#5 and Doc. #10) would render these objections moot.*

*Wayne Doyle,s objection: Motion for definite statement:*
*Will this Court state for the record the date Plaintiff Doyle would have had to file objections to the Magistrates decision to be timely filed for this Court to consider the pleading?*

*On 1/26/2007/ within Magistrate Merz (order for transcript) Criminal Case No. 3:07-cv-03 is recorded.*

*On 2/22/2007, Judge Rose stated: The Court finds that in this Report and Recommendation th Chief Magistrate Judge's **did find the facts** specifically and **stated separately** his conclusions of law which this Court subsequently adopted over objections.*

*Wayne Doyles objection: Motion for definite statement.*
*Will this Court state for the record the facts specIFically and separately stated in the Chief Magistrate Judge,s report and recommendation.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WAYNE DOYLE,

                Plaintiff,      :     Criminal Case No.  3:07-cv-03

- vs -

JOHN MCCONAGHA, et al,             Chief Magistrate Judge Michael R. Merz

                Defendant.     :

---

## ORDER FOR TRANSCRIPT

---

It is hereby ORDERED that the court reporter, Cathy Schutte-Stant, shall be paid for

her services and for the transcripts of the Preliminary Injunction Hearing rendered on January 22,

2007, for the use of this Court.

        IT IS SO ORDERED.

January 26, 2007

                        s/ Michael R. Merz
                        Chief United States Magistrate Judge

```
1                    THE COURT:  Good morning.  Mr.
2    Doyle?
3                    MR. DOYLE:  Yes, sir.
4                    THE COURT:  And Ms. Ross?
5                    MS. ROSS:  Yes, sir.
6                    THE COURT:  This is Judge Michael
7    Merz here in Dayton.  We have set up this
8    conference to address Mr. Doyle's motion for
9    temporary restraining order in the case that he
10   has filed against the Clark County library and
11   its director, Mr. McConagha.
12                   MS. ROSS:  McConagha.
13                   THE COURT:  McConagha.  And the case
14   number -- I'm reciting all this because we are on
15   the record.  The Case Number is 3:07-cv-003.
16                   Mr. Doyle, I assume you have not
17   previously had a chance to make Ms. Ross's
18   acquaintance.
19                   MR. DOYLE:  No, I haven't, sir.
20                   THE COURT:  All right.  Once you
21   filed the -- your complaint, the Court is obliged
22   to, if it's not going to issue a temporary
23   restraining order immediately and without notice
24   to the other parties.
25                   MR. DOYLE:  That's right.
```

3

1          THE COURT:   It is required to give
2   notice to the other parties unless it finds that,
3   that it ought to proceed without notice.  And in
4   this case, since you've been suspended since
5   March of 2005 and since we were able to get
6   notice to the other party right away, it seemed
7   to me that that was what I was required to do by
8   Rule 65.
9          So that's why we've notified the
10  library and the library of course has retained
11  Ms. Ross to represent them in this case.
12          The first matter I want to deal with
13  is the question of consent to magistrate
14  jurisdiction.  I, as Ms. Ross I think probably
15  knows and, Mr. Doyle, I'll need to explain to
16  you, I'm a United States magistrate judge.  That
17  means I'm appointed by the judges and not by the
18  President of the United States, and I'm going to
19  be handling the case for some -- because Judge
20  Rose has asked me to, for some parts.
21          I can, with your consent, handle the
22  case for everything from what we're doing this
23  morning through the jury trial that you have
24  demanded to final judgment.  But that depends
25  upon your consent and of course the consent of

4

1   Ms. Ross's clients.

2                   Usually, the advantage to the

3   parties is that that can let things go a lot

4   faster.  For example, if you consent, then I

5   would have the authority to decide your motion

6   for temporary restraining order.

7                   If you don't consent or Ms. Ross's

8   clients don't consent, then we have to -- I have

9   to make a recommendation to Judge Rose.  There's

10  a fairly long period of time for objections.  And

11  then Judge Rose would have to consider those

12  objections.

13                  That's really the reason why we have

14  magistrate judges so that some cases can be moved

15  along a little faster than the other ones would

16  be.

17                  Any questions about that, Mr. Ross?

18  I'm sorry, Mr. Doyle?

19                  MR. DOYLE:  Will Attorney Rose

20  consent?

21                  THE COURT:  Well, I'll ask her.  Ms.

22  Ross, is the library willing to consent?

23                  MS. ROSS:  At this point, no, your

24  Honor.

25                  THE COURT:  Well, that moots the

5

```
 1   thing.
 2                MS. ROSS:  Okay.
 3                THE COURT:  Because as I should have
 4   pointed out, Mr. Doyle, if I didn't, the consent
 5   has to be unanimous.  So we will send out a
 6   formal letter with my resume to both parties and
 7   allow you to take a look at that once you've
 8   gotten copies of it.
 9                MS. ROSS:  Okay.
10                THE COURT:  All right.  So we're
11   right to the merits then of the temporary
12   restraining order.
13                Mr. Doyle, is there anything more
14   you want to tell me about why the library should
15   be restrained from excluding you other than what
16   you have said in the papers?
17                MR. DOYLE:  Let me look over, let me
18   look over the pages.
19                THE COURT:  Sure.  Sure.
20                MR. DOYLE:  Due process.
21                THE COURT:  Okay.  What did you want
22   to say about that?
23                MR. DOYLE:  Can we talk about that
24   now?
25                THE COURT:  Sure.
```

6

1              MR. DOYLE: Am I entitled to be in
2   the library now?
3              THE COURT: Well, that's the
4   question for the lawsuit. You've got -- as I see
5   the order from Mr. McConagha, you've been
6   excluded from the library from March 21st of 2005
7   up until March the 21st of this year. And
8   what -- as I understand it, what you're asking
9   the Court to do is to reverse that order so that
10  you can be in the library now. Right?
11             MR. DOYLE: Yes.
12             THE COURT: Okay. Is there anything
13  you want to tell me as to why you think you were
14  unfairly excluded from the library?
15             MR. DOYLE: Because there is no
16  written statement from Angie Jones or the person
17  that is supposed to be my accuser.
18             THE COURT: Because she didn't make
19  a written statement, huh, okay.
20             MR. DOYLE: There's no recorded
21  statement from this person either.
22             THE COURT: No recorded statement.
23  Okay. I thought I saw some reference in there,
24  but I guess maybe not. Yeah. I see a note back
25  here -- this is a part of your complaint.

```
                                                              7

 1              MR. DOYLE:  The public, the public
 2   record request shows that Mr. McConagha said
 3   there was a recorded statement.
 4              THE COURT:  Right.  And it says it
 5   was enclosed.  So, this is --
 6              MR. DOYLE:  Where is the recorded
 7   statement?
 8              THE COURT:  Well, I --
 9              MS. ROSS:  Your Honor, I do have
10   some information about that.  There was never any
11   tape recording.  Mr. McConagha spoke with the
12   complainant and made a written summary of it and
13   he provided a copy of that written summary to Mr.
14   Doyle and his attorney.
15              THE COURT:  And that would be the
16   note that, I guess, that's part of your
17   complaint, Mr. Doyle, that says:  Notes from John
18   McConagha's phone call to complainant regarding
19   March the 18th, 2005 incident.
20              MS. ROSS:  That's my understanding,
21   your Honor, is when Mr. McConagha got the request
22   for recorded statement, that's what he provided
23   in response to that request.  There is -- there
24   never has been any tape recording.
25              THE COURT:  Okay.
```

9

1   witnessed?  Is that what you're saying?

2                MR. DOYLE:  Let me ask you, Mr.

3   Merz, is that the law?

4                THE COURT:  I don't know yet.  I

5   haven't had a chance to do any research in this

6   particular area because I wanted to get this

7   conference going as quickly as possible, to find

8   out what the positions of the parties were and

9   then -- and then do the research once I had a

10  second or two to do that.  There are --

11               MR. DOYLE:  Can McConagha be a

12  witness?

13               THE COURT:  To what?

14               MR. DOYLE:  Of what happened in the

15  library.

16               THE COURT:  No, is's not a witness

17  of what happened in the library.  As far as I

18  know, it's -- there isn't any other witness

19  besides Angie Jones.  Is that your understanding,

20  Ms. Ross?

21               MS. ROSS:  Well, Ms. Jones first

22  reported her concerns about Mr. Doyle to the

23  security officer who was on duty in the library

24  that day.

25               THE COURT:  Right.

10

```
 1              MS. ROSS:  So to the extent, to some
 2   extent he is a witness and he, and he saw Mr.
 3   Doyle, I believe, present that day.  There also
 4   happened to be a police officer on duty that day
 5   as well who also witnessed Mr. Doyle on the day
 6   in question.
 7              THE COURT:  Okay.
 8              MS. ROSS:  So we have some
 9   additional fact witnesses or direct witnesses, I
10   suppose.
11              THE COURT:  Other people --
12              MR. DOYLE:  Excuse me.
13              THE COURT:  Go ahead.
14              MR. DOYLE:  At the appeal hearing,
15   were they present, those --
16              THE COURT:  I don't know.
17              MR. DOYLE:  The officer, Angie Jones
18   and whatever, the fact Mr. McConagha, was they
19   actually at the meeting, at the hearing?
20              THE COURT:  I don't know, Mr. Doyle.
21   Were you there?
22              MR. DOYLE:  Yes.
23              THE COURT:  So you know whether they
24   were there or not.  I don't.  What can you tell
25   us about that?
```

```
                                                          11
 1                    MR. DOYLE:  I was asking that to the
 2  attorney for the library.
 3                    THE COURT:  Do you know, Ms. Ross?
 4                    MS. ROSS:  No, I was not present.
 5  It's my understanding, as you just suggested,
 6  that Mr. Doyle was present.
 7                    THE COURT:  Right.  What can you
 8  tell us about that, Mr. Doyle?
 9                    MR. DOYLE:  Okay.  I'm -- just a
10  minute.  I'm looking at McConagha's statement at
11  the hearing.
12                    THE COURT:  Okay.
13                    MR. DOYLE:  Does Mrs. Ross have the
14  injunction in front of her?
15                    THE COURT:  I hope so.
16                    MS. ROSS:  Well, I have the
17  complaint and the motion for temporary
18  restraining order in front of me, yes.
19                    THE COURT:  Right.
20          ·        MS. ROSS:  The library, to my
21  knowledge, has not received them yet but I pulled
22  them off the Court's electronic dockets.
23                    THE COURT:  Right.  There hasn't
24  been any process issued in the case.  We'll come
25  back to that issue.
```

12

1              MS. ROSS:  Right.

2              MR. DOYLE:  Look at page 3.

3              THE COURT:  Page 3 of?  Page 3 of

4    what?  Oh, I see.  Okay.  That's Mr. McConagha's

5    letter of April 25th, 2005 to Mr. Edwin

6    Grinvalds, G-R-I-N-V-A-L-D-S who, I guess, was

7    your lawyer at the time.

8              MR. DOYLE:  Yes, sir.

9              THE COURT:  Okay.  So I'm looking at

10   that.  Do you have that, Ms. Ross?

11             MS. ROSS:  Yes, I do, your Honor.

12             THE COURT:  Excellent.

13             MR. DOYLE:  Could you, judge, could

14   you please have their attorney to read that?

15             THE COURT:  She has read it.

16             MS. ROSS:  Yes, I have.

17             MR. DOYLE:  So is this her

18   understanding that anyone in McConagha's favor

19   was there.

20             THE COURT:  I'm sorry?  What's your

21   question?

22             MR. DOYLE:  Is it, does she

23   understand that there was no one else in the

24   meeting or in the hearing?

25             THE COURT:  Except for you and

13

1  McConagha.

2                MR. DOYLE:   Me and my attorney.

3                THE COURT:   And McConagha.

4   * * *        Yeah, I think she understands that.

5  I do too.

6                MR. DOYLE:   Okay.   Well, earlier she

7  said she didn't know if they was there.

8                THE COURT:   She -- knowing,

9  sometimes lawyers, lawyers will use the word

10  "knowing" really to mean:   Did I see it or did I

11  hear it.   She wasn't there, so she doesn't know

12  in that sense, same as me.

13                But her understanding is that Mr.

14  McConagha is telling the truth in this letter

15  and, according to what you've told us, that's

16  accurate, that you and your lawyer and McConagha

17  were the only persons who were there.

18                MR. DOYLE:   And the prosecutor's

19  office.

20                MS. ROSS:   Yes.

21                THE COURT:   Or was there somebody

22  there?

23                MS. ROSS:   Your Honor, the library

24  was represented in this matter and subsequent

25  administrative charges with the Ohio Civil Rights

14

1 | Commission by an assistant county prosecutor.

2 | According, my understanding from reviewing the

3 | records relating to the Ohio Civil Rights

4 | Commission Charge which was dismissed, that

5 | assistant county prosecutor was present at the

6 | appeal hearing as well.

7 | THE COURT: Okay. I didn't know

8 | that.

9 | MR. DOYLE: But were the witnesses

10 | there?

11 | THE COURT: No. Not unless you tell

12 | us they were.

13 | MR. DOYLE: What I was saying is,

14 | based on the hearing decision, and what you're

15 | reading, were they there?

16 | THE COURT: No.

17 | MR. DOYLE: So did Mr. McConagha

18 | just rely on the security officer's report?

19 | THE COURT: Well, what he says is,

20 | and we don't have at the present time any basis

21 | to dispute this. What he says is he relied on

22 | the security officer's report, plus his call to

23 | Angie Jones plus the affidavit of Stephanie

24 | Southers, and I don't know -- I haven't seen that

25 | document. I don't know what that is. Plus your

15

```
 1   statement.   That's what he says he relied on.
 2              MR. DOYLE:   So what I want to know
 3   is:   What evidence was presented at the hearing.
 4              THE COURT:   Just exactly what you've
 5   already been told.
 6              MR. DOYLE:   I mean as far as the
 7   evidence.                ***
 8              THE COURT:   The security officer's
 9   statement, the complainant's telephone
10   conversation with McConagha, the Stephanie
11   Southers affidavit which I haven't seen and your
12   statement.   That's what was presented.
13              MR. DOYLE:   Is, is, is that legal
14   evidence for a security officer to supposedly
15   take a person's, you know, accusations on another
16   person?
17              THE COURT:   Well, that's what we've
18   got to decide, you know, if Ms. Jones, this is
19   purely hypothetical, but if Ms. Jones had gone to
20   the police and said, you know, "on this day, Mr.
21   Doyle threatened me," that would be enough for a
22   police officer to file a criminal complaint, but
23   obviously it wouldn't be enough to convict you in
24   a court of law.   They would have to bring in Ms.
25   Jones and she'd have to testify under oath in a
```

16

```
 1  court of law.
 2            But of course that's the whole
 3  question that this case seems to raise, is
 4  whether Mr. McConagha, or whether any public
 5  library, has to follow rules of evidence such as
 6  are applicable in criminal court.
 7            MR. DOYLE:  Could that just be
 8  hearsay evidence?
 9            THE COURT:  It is hearsay.
10            MR. DOYLE:  That this is based on.
11  Then this is why I'm filing this.
12            THE COURT:  Okay.  All right.  We
13  have an understanding of your position then.
14            As I understand your position, it is
15  that you cannot, or no one can be barred from a
16  public library on the basis of a finding which is
17  just based on hearsay evidence.
18            MR. DOYLE:  Yeah, because Mrs.
19  Jones, I don't even know -- for one thing, I
20  don't even know a Mrs. Jones and probably never
21  seen her before.
22            THE COURT:  Okay.
23            MR. DOYLE:  And this invisible
24  person coming forward that he so-called saying
25  that made the statement, in other words, if I,
```

17

1  could see something handwritten in her, that she

2  made some kind of report on me.  I mean, because

3  basically, Mr. Merz, it seems like she would have

4  to make a report, or a written statement to the

5  officer against me before the officer could make

6  a move.

7              THE COURT:  Well, that's not -- that

8  wouldn't be the law if it were a criminal charge,

9  a person who alleges that they are a victim of a

10  crime does not have to make a written report

11  before a criminal charge can be filed or a

12  warrant can be issued for your arrest.  Those

13  kinds of complaints are made verbally all the

14  time.  But I hear what you're saying.  I

15  understand what your claim is.

16              MR. DOYLE:  Does the Constitution

17  allow a person to face their accuser?

18              THE COURT:  In a criminal case, yes.

19              MR. DOYLE:  What about any other

20  case?

21              THE COURT:  Not necessarily.

22              MR. DOYLE:  Give me an example.

23              THE COURT:  Well, I, I just did.

24  You couldn't be convicted in a criminal case

25  without being given an opportunity to face your

18

1   accuser but you could be arrested. And I guess
2   the question of whether you can be excluded from
3   a public library, based upon hearsay evidence, is
4   the question that this case presents.
5               MR. DOYLE:  I'm talking about being
6   found guilty.
7               THE COURT:  You haven't been found
8   guilty of anything, have you?
9               MR. DOYLE:  I've been barred from
10  the library for years.
11              THE COURT:  Well, that's not a
12  criminal conviction.  That's a, that's your being
13  barred from a public place.
14              MR. DOYLE:  Yes.
15              THE COURT:  The question is whether
16  that's --
17              MR. DOYLE:  On what grounds?  In
18  other words -- what grounds?
19              THE COURT:  On grounds of harassing
20  a patron.  That's the way I read it anyway.
21              MR. DOYLE:  If I haven't faced the
22  patron then, how do they know it was me?
23              THE COURT:  Well, because I guess --
24              MR. DOYLE:  Or if -- how does he
25  know it was me?  In other words, if I -- okay.

19

1                    THE COURT:  I understand the

2    question you're raising.  ✗✗✗

3                    Ms. Ross, does -- anything that you

4    want to add to the record at this point?  I think

5    we understand what, I understand pretty

6    completely what Mr. Doyle's claim is.

7                    MS. ROSS:  Yes, a couple things,

8    your Honor.  First, I mentioned briefly in

9    connection with the county prosecutor's presence,

10   in 1990 -- excuse me, 2005 after being barred

11   from the library most recently, Mr. Doyle filed a

12   charge with the Ohio Civil Rights Commission

13   alleging race discrimination and also retaliation

14   because he had previously filed a charge with

15   OCRC when he had been banded before.

16                    Anyway, the -- a couple months

17   later, the OCRC issued its decision dismissing

18   his charge, finding no evidence of race

19   discrimination or retaliation.  And as we've been

20   talking, even with Mr. Doyle's questions, about

21   the appeal hearing that he was granted it appears

22   that this complaint is focussed primarily upon

23   due process.  Clearly, Mr. Doyle was given due

24   process.  He was given notice of the allegations

25   against him and given an opportunity to be heard.

NOT IN COURT.

20

1   That's all that the Constitution requires in
2   administrative hearings which this doesn't even
3   rise to that level.

4              There is no constitutional right to
5   face your accuser, hearsay evidence is permitted
6   and so I think the, even assuming that Mr. Doyle
7   had a Constitutional Right or a property right or
8   a liberty interest, you know, in being present in
9   the library, I think that right was not taken
10  away from him without due process.

11             Also as you pointed out at the
12  beginning, your Honor, this notice barring Mr.
13  Doyle from the library was issued almost two
14  years ago. The two-year period of bar is
15  going -- due to expire in March. So the doctrine
16  of laches would suggest that there's no need for
17  a temporary restraining order at this time.

18             I am -- the Ohio Revised Code does
19  give the library and any public library the right
20  to set rules of conduct for its patrons.

21             THE COURT: Do you have a reference
22  for me on that?

23             MS. ROSS: Yes, I do, your Honor.
24  It is 3375.40H. 3375 is the general chapter
25  about public libraries under Ohio law. And there

21

1   happens to have been some recent case law

2   concerning that subsection involving the Columbus

3   Metropolitan Library. There's a Sixth Circuit

4   case and an Ohio Court of Appeals case involving

5   a patron who sued the Columbus library.

6            THE COURT: Could you give Mr. Doyle

7   and me the citations on that.

8            MS. ROSS: Yeah, I pulled those out

9   late yesterday. The case name is Neinast,

10   N-E-I-N-A-S-T versus Board of Trustees of the

11   Columbus Metropolitan Library.

12            MR. DOYLE: Say that again.

13            MS. ROSS: N-E-I-N-A-S-T.

14            THE COURT: Neinast.

15            MS. ROSS: I happen to have some

16   vague recollection about it, your Honor, because

17   I read about it in the Columbus paper. It

18   involves a barefoot patron. And the library

19   enforced its rule concerning having to wear

20   shoes.

21            THE COURT: Okay.

22            MS. ROSS: It barred Mr. Neinast

23   from the library. Unfortunately -- ah, here's my

24   citation. The Sixth Circuit case is, it was

25   recommended for full text publication. I'm not

22

1   sure my copy here has the text.  It is Neinast
2   versus Columbus Metropolitan Library.  I it was
3   issued August 1st -- excuse me.  October 10th,
4   2003.
5                 THE COURT:  All right.
6                 MS. ROSS:  And then --
7                 MR. DOYLE:  The Case Number.
8                 MS. ROSS:  Yes, it is 02-3482.
9                 THE COURT:  That's in the Sixth
10  Circuit Court of Appeals.
11                MS. ROSS:  Yes.
12                THE COURT:  All right.
13                MS. ROSS:  And then there is a
14  Franklin County Court of Appeals case that was
15  reported.
16                THE COURT:  Same title?
17                MS. ROSS:  Yes, 165 Ohio App 3d 211.
18                MR. DOYLE:  Say that again.
19                MS. ROSS:  165 Ohio App 3d 211.  I
20  can give you another Case Number too.  It's
21  2006-Ohio-287.
22                THE COURT:  All right.
23                MS. ROSS:  Those appear to be the,
24  certainly, the most recent cases and the main
25  cases that discuss the authority of the library

```
 1   to regulate the conduct of its patrons.
 2                 THE COURT:   Okay.
 3                 MS. ROSS:   Again, they go more on
 4   the issue of whether regulating the required --
 5   regulating shoes is within the library's
 6   authority, but they do touch on the authority of
 7   the library to have rules and to bar patrons who
 8   don't follow those rules.
 9                 THE COURT:   All right.  I promised
10   that before we finished I would come back to the
11   question of process.
12                 Mr. Doyle, when you sue somebody --
13                 MR. DOYLE:   Wait a minute.
14                 THE COURT:   Okay.
15                 MR. DOYLE:   My question was still
16   not answered.   In other words, how do they know
17   that it was me?
18                 THE COURT:   Well, the question --
19                 MR. DOYLE:   I'm asking the attorney.
20                 THE COURT:   I understand that.
21                 MR. DOYLE:   Okay.
22                 THE COURT:   She's already answered
23   that question to the extent that she knows.  That
24   is that there's a police officer and a security
25   guard who saw you on the premises, and Miss Jones
```

24

1  says it was you.  And that's all hearsay, and

2  that's all McConagha had to go on.

3            MR. DOYLE:  That's hearsay.

4            THE COURT:  Yes, it is.  ***

5            MR. DOYLE:  I'm asking Mrs. Ross,

6  Mrs. Ross, how does McConagha know that it was

7  me?

8            THE COURT:  She's already answered

9  that question.

10            MR. DOYLE:  I did not hear her

11  answer.               *****

12            THE COURT:  She's answered it to my

13  satisfaction.  She knows it exactly the same way

14  you know it, which is McConagha's statement which

15  is that there was a police officer present, there

16  was a security officer present, and Miss Jones

17  identified you.  That's all she knows.

18            If she's got some private

19  conversation with McConagha, she is required, by

20  the law of attorney ethics, not to talk to you or

21  me about what McConagha has said to her other

22  than what's in this record.

23            I don't mean to cut you off, Ms.

24  Ross, if you've got additional anything you want

25  to say about that.

25

1          MS. ROSS:  No, that's precisely
2   correct, your Honor, thank you.
3          THE COURT:  All right.  Let me come
4   back to the question of process.  We've talked a
5   lot during this discussion about due process.
6          One of the things that is required
7   by due process, Mr. Doyle, when you sue somebody
8   in federal court, you have to serve them with a
9   summons and a copy of the complaint.
10          And the summons is just essentially
11   an order from the Court that the defendant has to
12   answer it, has to file a formal answer with the
13   Court.
14          MR. DOYLE:  Yes, sir.
15          THE COURT:  Is any of this ringing a
16   bell?  Do you know anything about that?
17          MR. DOYLE:  You keep talking.
18          THE COURT:  Okay.  My question was:
19   Do you know anything about service of process?
20          MR. DOYLE:  I mailed a copy to the
21   defendant.
22          THE COURT:  See, that doesn't get
23   it.  Under, under the Federal Rules of Civil
24   Procedure, you have to have the clerk issue a
25   summons, a formal court document, and it has to

26

1   be served on them.   There are a number of ways
2   that it can be legally be served on them.   But
3   just sending a copy in the mail is not sufficient
4   under the rules.
5               You're in Springfield.   You can, I
6   understand that these papers were filed in the
7   court in Columbus.   Is that right?
8               MR. DOYLE:   Yes, sir.
9               THE COURT:   They got transferred to
10  Dayton because Clark County is within, if you
11  want to talk about, I guess we might call it the
12  catchment area of the Dayton location of court,
13  any cases filed against a defendant in Clark
14  County get handled in Dayton, so that's why it's
15  here in Dayton, but if you want to come to the
16  clerk's office in Dayton, they can provide you
17  with a summons form for you to fill out.
18              They can also provide you, we have a
19  kind of a guide on some of the procedural stuff
20  that we've written up for folks who are filing
21  their own cases and don't have a lawyer.   They
22  could give you a copy of that.
23              On the other hand, if you like, I
24  can have the clerk mail that to you.
25              MR. DOYLE:   Yes, sir.

27

1          THE COURT:   You'd like to have it
2    mailed?
3          MR. DOYLE:   Yes, sir.
4          THE COURT:   We'll have that done
5    yesterday.
6          All right.   I think I understand
7    what the issues are on the temporary restraining
8    order motion, and I will be preparing a report
9    and recommendations to Judge Rose.
10          I will be sending Mr. Doyle the
11    summons forms and the forms, if he chooses to
12    proceed this way, to have the United States
13    marshal make the service, and the guide for pro
14    se litigants.
15          And I take it from your having
16    raised the question of process at the outset, Ms.
17    Ross, the library's not willing to waive service
18    of process in this case.
19          MS. ROSS:   That's correct, your
20    Honor.   At this point would you like me to enter
21    a notice of appearance?
22          THE COURT:   I would appreciate that.
23          MS. ROSS:   I was thinking about that
24    yesterday.   I'll try to get that done today or
25    Monday so that you'll have that officially in the

28

 1 | file.
 2 |                 THE COURT:  All right.  And then I
 3 | will also be sending out a formal suggestion of
 4 | the possibility of consent.
 5 |                 MR. ROSS:  Okay.
 6 |                 THE COURT:  With a resume so that
 7 | people -- both sides can take a look at that and
 8 | see what you think.
 9 |                 MS. ROSS:  Yeah.  I'll be glad to
10 | revisit that issue, your Honor.
11 |                 THE COURT:  All right.  Anything
12 | else for the record?
13 |                 MR. DOYLE:  If you haven't received
14 | service yet, how can you sign on?
15 |                 THE COURT:  Well, I notified, I
16 | notified her so we could have this discussion,
17 | Mr. Doyle.  I actually didn't notify her.  I
18 | notified the library.
19 |                 They know about it.  But they have
20 | to be notified in a formal kind of way.  It's
21 | kind of like you know who the witnesses against
22 | you are, but you say:  Hey, all we've got from
23 | them is hearsay.  It's just another formal
24 | requirement.
25 |                 MR. DOYLE:  When does the case

29

1  start?

2              THE COURT:  The case starts when you

3  file it.

4              MR. DOYLE:  Is it filed?

5              MS. ROSS:  But it's not served.

6              THE COURT:  But not served.  That's

7  the next step.  You might want to get a hold of a

8  copy of the Federal Rules of Civil --

9              MR. DOYLE:  How many days do I have

10  to serve it?

11              THE COURT:  A hundred and 20.  But

12  until you make service this court can't make any

13  order against the defendant.

14              MR. DOYLE:  Can anything else go on

15  in this case?

16              THE COURT:  Well, yeah, we've just

17  had this temporary restraining order hearing.

18  Again, that's the -- because you -- when a

19  person --

20              MR. DOYLE:  I was talking about the

21  case itself.

22              THE COURT:  Beyond the temporary

23  restraining order hearing and the report that I

24  write and any objections that either party might

25  have to that, no, there can't be any discovery in

30

1    the case.

2                    Really the first step has to be

3    service of process.  The only reason why we've

4    done this little hearing is because, you know,

5    when a person, particularly a person who's

6    proceeding without a lawyer, files a motion for

7    emergency relief, the Court tries to, tries to

8    hold a hearing on that as quickly as possible.

9                    Anything else for the record?

10                    MR. DOYLE:  As soon as you mail that

11    to me, I will get it to him.

12                    THE COURT:  Excellent.  All right.

13    I'll get those out yet today.

14                    MS. ROSS:  Thank you very much, your

15    Honor.

16                    THE COURT:  Thanks very much.

17                    (Proceedings concluded.)

18                        -  -  -

19

20

21

22

23

24

25

```
                                                            31

 1

 2                    C-E-R-T-I-F-I-C-A-T-E

 3                    I, Debra Lynn Futrell, Notary Public

 4    in and for the State of Ohio at large,

 5                    Do Hereby Certify that the foregoing

 6    pages are a true and correct transcription of the

 7    CD taken of the proceedings held in the

 8    afore-captioned matter before the Honorable

 9    Michael R. Merz, Chief Magistrate Judge, to the

10    best of my ability to hear and discern speakers

11    over the CD.

12

13

14              S/Debra Lynn Futrell

15              Debra Lynn Futrell, RMR-CRR
                Notary Public, State of Ohio
16              My Commission Expires 12-27-08

17

18

19

20

21

22

23

24

25
```

*IN THE UNITED STATES DISTRICT COURT*

*SERVICE*

*I HERBY CERTIFY THAT A TRUE COPy OF THE foregoing MOTION WAS SERVED UPON Lauren M. Ross. P.O. Box 1488 Springfield, Ohio 45501-148  this 27 day of feburary 2007.*

*Wayne Doyle*