# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WAYNE DOYLE,

        Plaintiff,      :      Case No. 3:07-cv-003

                                District Judge Thomas M. Rose
       -vs-                      Chief Magistrate Judge Michael R. Merz

                         :

CLARK COUNTY PUBLIC LIBRARY,
  et al.,

        Defendants.

## SUBSTITUTED REPORT AND RECOMMENDATIONS; DECISION AND ENTRY

### Motion to Dismiss

This case is before the Court on Defendants' Amended Motion to Dismiss, filed and served March 30, 2007 (Doc. No. 46).

Ordinarily, the time to respond to a motion served by mail is twenty-four days after its service. See S. D. Ohio Civ. R. 7.2 and Fed. R. Civ. P. 6. That made Plaintiff's response due April 23, 2007, and the Court notified Plaintiff of that date (Doc. No. 47). On April 18, 2007, Plaintiff requested a sixty-day extension of time to retain counsel and respond (Doc. No. 50). On April 20, 2007, the Court denied that Motion (among others) and extended the Plaintiff's time to respond to May 1, 2007 (Entry, Doc. No. 51). On April 25, 2007, Plaintiff moved for reconsideration (Doc. No. 52) and the Court extended the time to respond to June 22, 2007 (Doc. No. 53). However, the Court's calendar was not amended to show the additional extension and the Court believed that Plaintiff's time expired on May 1, 2007. When he had not filed any response by June 21, 2007, the Magistrate Judge recommended the Motion to Dismiss be granted (Report and Recommendations,

1

Doc. No. 57). The next day Plaintiff timely filed his Response in Opposition (Doc. No. 58) and he has since filed Objections (Doc. No. 59) and five other Motions (Doc. Nos. 60, 61, 62, 63, and 64). Because the Report and Recommendations was premature, this Substituted Report and Recommendations considers the Motion and Paintiff's Response in Opposition *de novo*.

The Motion to Dismiss was made under Fed. R. Civ. P. 12(b)(6) whose purpose is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007), citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").
>
> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Hawai 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289

2

> F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase"). *Bell Atlantic*, 127 S. Ct. at 1966.

*Bell Atlantic* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)([A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") *See also Neitzke v. Williams,* 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 104 S. Ct. 229, 81 L. Ed. 2d 59(1984); *Monette v. Electronic Data Systems, Inc.,* 90 F.3d 1173, 1189 (6th Cir. 1996). For purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). A *pro se* litigant is entitled to liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519 (1972). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988); *followed Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236 (6th Cir, 1990); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995). The Court "need not accept as true legal conclusions or unwarranted factual inferences*." Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Sogevalor S.A. v. Penn Central Corp.*, 771 F. Supp. 890, 893 (S.D. Ohio 1991). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.,* citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); see also Wright & Miller, FEDERAL PRACTICE AND

PROCEDURE: Civil 2d §1357 at 311-318 (1990). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Trombley*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007), *citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

Plaintiff's Complaint and Amended Complaint can be fairly read and liberally construed to allege the following: Plaintiff is a patron of the Clark County Public Library (the "Library"). On March 21, 2005, he was barred from the Library for two years on complaint of another patron, Angie Jones, that he was following her, staring at her, and harassing her in the Library on March 18, 2005. Angie Jones and Plaintiff are African-American. The letter granted Plaintiff the right to appeal to the Director of the Library, Defendant McConagha, within thirty days. Plaintiff exercised that right and appeared for a hearing before Mr. McConagha at which the complainant, Ms. Jones, was not present, but at which Plaintiff was present and represented by counsel. After the hearing, Mr. McConagha adhered to his prior decision barring Plaintiff for a two-year period.

As best the Court understands the Amended Complaint, Plaintiff is claiming that he was deprived of his right of access to the Library without due process of law and that the Library discriminated against him on the bases of race, religion, education, and background. He asserts what was done to him amounts to cruel and unusual punishment and deprivation of his rights peaceably to assemble and to avail himself of public accommodations free of prohibited discrimination. He claims he was entitled to trial by jury and to confront his accuser before being barred. He asserts that the conduct of Defendants toward him constituted malicious prosecution, breaches of contract and promissory estoppel, and the intentional and negligent infliction of emotional distress. He asserts he has a right of action for these various claims under 42 U.S.C. §§ 1981, 1983, and 1985,

and 18 U.S.C. § 241.

Plaintiff correctly asserts this Court has subject matter jurisdiction under 28 U.S.C. §1331 and 1343; while Plaintiff does not mention it, the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

The Supreme Court has never identified a substantive due process right of access to a public library. However, as Defendants admit, the constitutional right to receive information, protected by the First Amendment, includes a right to some level of access to public libraries. *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1255 (3rd Cir. 1992); *Armstrong v. Dist. of Columbia Public Library*, 154 F. Supp. 2d 67, 75 (D.D.C. 2001). Furthermore, for First Amendment purposes, public libraries have been classified as limited public forums which means that library management is obligated to allow patrons to exercise such rights as are consistent with that designation. *Kreimer*, 958 F.2d at 1262. To protect the rights of all library users and make their uses compatible with one another, libraries appropriately adopt codes of conduct which prohibit the sort of conduct Mr. Doyle was accused of engaging in, to wit, harassment of another patron.

With respect to Plaintiff's constitutional claims, Defendants claim he is precluded from contesting Mr. McConagha's finding that he violated the Clark County Public Library's Code of Conduct because he did not appeal that finding as permitted by Ohio law. That argument is well taken. Ohio Revised Code § 2506.01 permits an appeal to the county Common Pleas court from a determination by an administrative body such as a library director or board of trustees. It is undisputed that Mr. Doyle took no such appeal. Under federal law, conclusions in state law proceedings are entitled to the same effect in federal litigation as they would be in subsequent state law proceedings. 28 U.S.C. § 1738; . *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); *Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968); *see, Allen v. McCurry,* 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 208 (1980). Ohio courts

5

would give preclusive effect to findings made in unappealed administrative proceedings. *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 653 N.E. 2d 226 (1995), syllabus. This Court is bound under § 1738 to give Mr. McConagha's decision the same effect the Ohio courts would give it.

There is also no doubt that the Clark County Public Library's Code of Conduct is a valid exercise of the police power in regulating the use of public library facilities. All patrons have the right to the use of the public library without being subjected to annoying, perhaps criminal, conduct. The conduct in which Mr. Doyle engaged with respect to Ms. Jones is unacceptable behavior in general and certainly the Library had the right, and perhaps the duty, to intervene to prevent its recurrence. To put it another way, Mr. Doyle had no constitutional right to engage in the conduct which he was found to have engaged in.

The Court must also consider whether Plaintiff was deprived of procedural due process by the manner in which his access to the Library was removed. The right of the public to use the public library is best characterized as a protected liberty interest created directly by the First Amendment. Since the right is not absolute – it can be lost for engaging in conduct inconsistent with the purpose of public libraries – the question becomes what process is due to a member of the public before that right is terminated or suspended. In *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Supreme Court prescribed the general method for analyzing whether particular procedures satisfy the requirements of procedural due process:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S., at 334-35. Plaintiff was not entitled to a pre-deprivation hearing because the public

interest in immediate intervention to prevent criminal behavior toward another patron outweighed his interest in access to the Library pending a hearing. There is no indication that the hearing was inordinately postponed or that he ever asked for a stay of the bar order pending the hearing. See *Hughlett v. Romer-Sensky*, 2006 U.S. App.LEXIS 16823 (6th Cir. 2006).

Plaintiff's due process rights were also adequately protected in the post-deprivation process. He was given immediate notice of the charge against him, an opportunity to see all of the evidence involved, an opportunity for a hearing with the ultimate decisionmaker, and even the right to be represented by counsel at that hearing. Finally, as a matter of state law, he could have appealed to the Common Pleas Court from the adverse decision.

Plaintiff complains that he was not afforded an opportunity to confront his accusers. The Confrontation Clause of the Sixth Amendment applies by its very terms only in criminal cases and Plaintiff was not criminally prosecuted. The same analysis applies to the Cruel and Unusual Punishment Clause of the Eighth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

Plaintiff also claims he was deprived of his right to trial by jury. The Seventh Amendment right to trial by jury does not apply to the States. *Pease v. Rathbun-Jones Engineering Co.*, 243 U.S. 273, 37 S. Ct. 283, 61 L. Ed. 2d 715 (1917); *Barrett v. Independent Order of Foresters*, 625 F.2d 73 (11th Cir. 1980); *United States v. Stangland*, 242 F.2d 843 (7th Cir. 1957). While the Ohio Constitution does contain a jury trial right, it has never been held to apply to every situation where a person is deprived of a public benefit.

Plaintiff also claims in conclusory fashion that he was discriminated against on the basis of race, religion, sex, education, and background. The first three of these constitute bases of prohibited discrimination under the Fourteenth Amendment as enforced by the Civil Rights Act of 1964. However, Plaintiff does not plead sufficient facts to state a claim for relief for deprivation of rights

7

on either of these bases. While he inferentially state that he is African-American, he does not claim that any similarly-situated non-African-American who was found to have harassed a fellow patron of the opposite gender was not similarly treated. He makes no cognizable claim based on the race of his accuser, since she is also African-American. With respect to religion, he does not state what his religious preference is or how the Library would have known it or how someone of a different preference was treated better after having harassed an opposite-gendered fellow patron. With respect to sex, it is true that his accuser is a woman, but he has not pointed to any instances where women accused of the sort of conduct in which he was found to have engaged have not been suspended. Finally, there is no constitutional prohibition on discrimination on the basis of education and "background," whatever that might mean.

Plaintiff's state law claims fare no better. He was not arrested or charged criminally, so he has no claim for malicious prosecution. Successful claims have uniformly involved arrest, incarceration, or charges of violation of non-traffic laws. *McMaster v. Cabinet for Human Resources*, 824 F.2d 518 (6th Cir. 1987).

Recovery for the tort of negligent infliction of emotional distress is limited to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person and where a plaintiff's claim does not arise out of such circumstances, the plaintiff fails to state a claim for negligent infliction of emotional distress. *High v. Howard,* 64 Ohio St.3d 82, 592 N.E. 2d 818 (1992), *overruled on other grounds, Gallimore v. Children's Hospital Medical Center,* 67 Ohio St.3d 244 (1993); *Strawser v. Wright,* 80 Ohio App. 3d 751, 610 N.E. 2d 610 (Preble Cty. 1992).

Promissory estoppel and breach of contract claims lie only when the parties have exchanged promises or one party has made a promise on which the other relied. Plaintiff does not alleged any sort of contractual relationship with the Library, much less any kind of promise breached by what

occurred in this case.

In recognizing the tort of intentional infliction of emotional distress in Ohio, the Ohio Supreme Court adopted Restatement of the Law 2d, Torts 2d, §46, and comment d to that section which reads:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033, 1053 (1936).

*Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 453 N.E. 2d 666 (1983). Plaintiff has not alleged any conduct by the Library which is outrageous.

Finally, because neither the Library nor Mr. McConagha violated any of Mr. Doyle's constitutional rights, Mr. Doyle is entitled to qualified immunity from any monetary liability for his actions with respect to Plaintiff. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994).

Plaintiff's Amended Complaint, even when liberally construed, fails to state a claim upon

9

which relief can be granted and should be dismissed without prejudice on that basis.

## Motions Filed July 2, 2007

This case is also before the Court on Plaintiff's Motions filed July 2, 2007, which are dealt with seriatim below:

1. Plaintiff objects to the Report and Recommendations filed June 21, 2007 (Doc. No. 59). However, he makes no substantive response to the analysis made in that Report. In any event, that Report is superseded by this Substituted Report and Recommendations. The General Order of Reference for the Dayton location of court permits the Magistrate Judge to reconsider decisions or reports and recommendations when objections are filed.

2. Plaintiff moves (Doc. No. 60) that the docket be corrected "to reflect (all) of the filings and orders filed with this Court." The Motion is denied because Plaintiff has not pointed out any way in which the docket is incorrect.

3. Plaintiff moves (Doc. No. 61) for findings of fact and conclusions of law "concerning (all) of Magistrate Merz Reports and Recommendations." To the extent required by Fed. R. Civ. P. 52, findings of fact and conclusions of law are included in each of the Reports and Recommendations.

4. Plaintiff moves (Doc. No. 62) for a "difinite [sic] statement (clarity) concerning the 6/21/2007 court entry's [sic]." To the extent the Court understands the request, it is responded to in the procedural history set forth at the outset of this document.

5. Plaintiff moves (Doc. No. 63) to have this case transferred to Columbus, Ohio, "for the Dayton Federal Court has not had a racial discrimination case go to trial." That purported statement of fact is not true; literally hundreds of racial discrimination cases have been tried

in federal court in Dayton.

6.  Plaintiff moves (Doc. No. 64) to have the undersigned "disqualified and removed as Judge for he erred and withdrew his 1/25/2007 recommendation's without explanation now he's going to have to withdraw the 6/21/2007 report and recommendation. I wonder what his reasoning will be?"

While the June 21, 2007, Report is superseded by this Report because of the Court's mistake on the due date of Plaintiff's opposition, the substantive conclusions in the original Report have not been changed because Plaintiff has presented no substantive opposition. In any event, making an error is not a basis for removing a judge; courts of appeals routinely remanded cases for retrial before the judge who made the mistake which led to reversal. The Motion for disqualification is denied.

July 3, 2007.

s/ **Michael R. Merz**<br>Chief United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).